UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6: 06-82-SSS-DCR |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| DAUGH K. WHITE, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

On February 9, 2007, a hearing was held in this matter to determine whether the Release Order previously entered by United States Magistrate Judge Robert E. Wier should be revoked or modified. [Record No. 226] At the hearing, the United States presented additional testimony and evidence in support of their motion. [Record No. 229] Thereafter, the Court ordered that the Magistrate Judge's Release Order be held in abeyance, pending a determination by this Court.

After reviewing the relevant materials de novo, including the testimony presented at the detention hearing before the Magistrate Judge, the findings of the Magistrate Judge related to release, and the additional evidence presented at the February 9th hearing, the Court has determined to release the Defendant on conditions, under § 3142(c). However, the Court will impose more stringent conditions in addition to those previously fashioned by the Magistrate Judge. This determination is based on a careful consideration of the factors contained in 18 U.S.C. § 3142 (g), including the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of the Defendant, and nature and seriousness of the

danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. § 1342(g) (2006).

**Analysis**

The Defendant is charged with conspiring with Richard Todd Roberts, Vernon Hacker, and others, to distribute and possess with intent to distribute cocaine, pills containing oxycodone and methadone, and pills containing hydrocodone, all in violation of 21 U.S.C. §§ 841(a)(1) and 846. As the Magistrate Judge noted in his Statement of Reasons and Findings Related to Release, [Record No. 227] these charges trigger the rebuttable presumption of detention set forth in 18 U.S.C. § 1342(e). That section provides that,

> [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . .

18 U.S.C. § 1342(e) (2006). Once triggered, "[t]he presumption shifts the burden of production to the defendant to show that his release would not pose a flight risk or a danger to any person and the community. The government retains the burden of persuasion." *United States v. Hinton*, 113 Fed. Appx. 76, 77-78 (6th Cir. 2004).

Here, the Magistrate Judge concluded that the Defendant had presented sufficient evidence to rebut the presumption that his release would pose a flight risk and a danger to the community. The Magistrate noted that the Defendant is a seventy-four year old man and husband of more than fifty years. He has lived almost his entire life on the same street in Manchester, and has many children and grandchildren in the area. The Defendant's daughter,

Pam Rycer, testified about his family history, residential history, and record of stable employment and public service at the hearing before the Magistrate Judge. She further vouched for his future appearances in this action, and the Magistrate Judge found her testimony to be credible. [Record No. 227, p. 2] Additionally, the Magistrate Judge pointed to the Defendant's clean criminal history and significant economic ties to the area in support of his findings.

After concluding that the Defendant had rebutted the presumption of detention, the Magistrate Judge weighed that presumption with the factors contained in § 1342(g) and concluded that a set of conditions did exist to reasonably assure the appearance of the Defendant and the safety of the community. The Magistrate Judge found that the nature and circumstances of the offense was a factor in favor of detention, but that the weight of the evidence, based on plea agreements of Hacker and Bobby Joe Curry, was low. The Magistrate Judge further found that the history and characteristics of the Defendant weighed in favor of release, despite the United States' introduction of evidence concerning past sexual conduct with minor females and the Defendant's possession of erectile dysfunction medication at the time of his arrest. Specifically, the Magistrate Judge found that the previously mentioned evidence including family ties, employment, length of residence, and criminal history were pro-release factors, while the testimony concerning the alleged sexual conduct with minor females deserved "diminished consideration." [Record No. 227, p.6] Finally, the Magistrate Judge found that the conditions imposed could adequately address any potential danger from release, as the alleged criminal conspiracy ended more than twenty-one months ago, and no significant evidence linked the Defendant to intervening criminal activity, other than the evidence related to the arrest.

Although the undersigned agrees with the Magistrate Judge's ultimate conclusion that conditions exist that would reasonably assure the Defendant's appearance in this matter and the safety of the community, it will impose a more stringent set of conditions based on its view of the evidence presented. Specifically, in considering the rebuttable presumption of § 1342(e) and the mandatory factors pursuant to § 1342(g), the undersigned finds that the weight of the evidence is *substantial*. Further, very credible evidence has been presented with respect to the Defendant's alleged sexual misconduct with minor females. Additionally, the undersigned does not find that the Defendant's lack of a criminal record, history of public service, or the treatment of co-defendants are persuasive based on the unique circumstances of this case.

First, contrary to the Magistrate Judge's findings, this Court does not consider the weight of evidence in this case to be low, based on the plea agreements of the co-defendants. Vernon Hacker entered his guilty plea before the Court on February 5, 2007, and credibly testified to the factual statements in his plea agreement, including those pertaining to Defendant White. Hacker admitted that he conspired with Defendant White to burn down a house, and that, thereafter, he and Defendant White and others engaged in a conspiracy to distribute narcotics. According to Hacker, White promised to protect Bobby Joe Curry for assisting in the arson, and Hacker and Roberts fulfilled that promise by warning Curry of possible investigations. The plea agreement of Bobby Joe Curry also supports Hacker's statements concerning the arson and conspiracy, although it does not specifically name Defendant White. In light of the timing of the various pleas, this omission is entirely understandable. The United States contends that both Hacker and Curry are now cooperating in the investigation and that the weight of the evidence has increased

as a result. Based on this evidence, most notably the credible testimony of Hacker in connection with his plea agreement, this Court finds that there is strength in the evidence that requires stricter conditions of release.[1]

Second, the Court finds that credible evidence was presented to support the allegations regarding the Defendant's sexual conduct with minor females. Agent Timothy Briggs testified that he took the sworn statement of a female who stated that she had engaged in sexual conduct with the Defendant when she was sixteen years old. The Defendant's sexual misconduct allegedly occurred in hotels initially, and later in parking lots around the area of the City of Manchester. Agent Briggs testified that the female stated that she terminated two pregnancies during the affair, both of which were paid for by the Defendant. According to Briggs, the female allegedly ended the relationship eighteen months ago. However, Agent Briggs further testified that, at the time of the Defendant's arrest in a parking lot in Manchester, erectile dysfunction medication, including liquid, injectable cialis liquid, and the cap for a syringe, were found in his vehicle. Probation Officer Jason Parman also testified that the Defendant currently takes medication for the sexually transmitted disease, herpes.

The fact that the Defendant has not been charged or convicted of these alleged sex crimes is not dispositive of the issue for purposes of § 1342(g). Nor do the rules of evidence prohibit

---

[1] The Court also notes its consideration of the letter submitted into evidence by the United States at the hearing on February 9, 2007. This letter appears to support allegations concerning the Defendant's involvement in drug activities. Agent Briggs testified that some of the statements in the letter have proved to be credible; however, the letter purports to have been written by an inmate in 1997 and contains many levels of hearsay on hearsay. Although evidence of the history and characteristics of the Defendant is relevant in considering a motion for detention, the overall effect of this letter does not alter the Court's analysis in this instance.

the Court's consideration of the hearsay statements by Agent Briggs at this stage of the proceeding. Based on the testimony presented and the evidence obtained at the time of his arrest, the Court concludes that there is credible evidence to support the allegations of the Defendant's sexual conduct with minor females. However, the Court believes that the danger presented by these allegations can be diminished by additional conditions on the Defendant's release, such as a prohibition against *any* contact with minor females who are not relative.

Finally, the Court does not attribute significant weight to the Defendant's lack of a criminal record, history of public service, or the United States' treatment of co-defendants in this case. As noted previously, the Defendant is charged in a multi-count indictment with conspiring to distribute narcotics. Two of the co-defendants, Hacker and Roberts, were city officials and long-standing members of the community. The alleged criminal activities occurred while the Defendant was serving as Mayor of the City of Manchester, a position he held for seven consecutive terms. The United States has presented some evidence that the Defendant was the leader of the alleged conspiracies, although the Defendant has also suggested that the drug dealer, Curry, was the leader.

In summary, it appears that the Defendant may have led a double life. On one hand, he is a seventy-four year old grandfather, with four children and ten grandchildren, and a wife of more than fifty years. He has served his community for twenty-eight years as Mayor and has lived almost his entire life on the same street. He owns or partially owns many businesses and some property in Manchester and has been aware of the investigation in this case since August of 2006. On the other hand, he is an alleged sexual predator who was involved in a violent drug

conspiracy for six of the last seven years of his term in office. It is unclear whether he was the leader of the conspiracy, but the statement provided in Vernon Hacker's plea agreement indicates that, at a minimum, he abused his power as Mayor in furtherance of the conspiracy.

Accordingly, under the circumstances of the case, the Court is not persuaded by the Defendant's lack of a criminal record and community ties. The nature of the charges presented and the allegations in support of those charges outweigh any inference that might otherwise be drawn from the Defendant's lack of a prior criminal history. However, the Court does believe that the conditions that will be imposed on the Defendant's release will reasonably assure that the Defendant will not be a flight risk or a danger to other persons and the community.

**Conclusion**

Based on a review of the mandatory factors pursuant to § 1342(g) and all other relevant considerations, the Court will impose the least restrictive set of conditions to address any potential flight risk and danger to the community, consistent with its findings. These conditions, in addition to those previously imposed by the Magistrate Judge and as more fully contained in the Court's Order Setting Conditions of Release, are as follows:

(1) the Defendant be placed on home incarceration and subject to electronic monitoring, under which the Defendant is restricted to his residence at all times except for medical needs or treatment and court appearances as pre-approved by the pretrial services officer, not to include exceptions for religious activities;

  (2) the Defendant shall refrain using any controlled substances use, except in strict compliance with medical directives. In addition, the Defendant shall refrain from using cialis or any other medications for erectile dysfunction;

  (3) the Defendant have no contact with: (i) local law enforcement (at the city or county level), except in case of an emergency; (ii) current of former employees of the City of Manchester; (iii) members of the local court system; (iv) unrelated minor females; and (v) no sexual contact of any kind with anyone other than his wife.

  The Court has scheduled a hearing for this date at 11:00 a.m. At that time, the Court will review these additional conditions with the Defendant. Accordingly, the United States' motion shall be **GRANTED**, to the extent that additional restrictions shall be imposed. In all other respects, the requested relief shall be **DENIED**.

  This 13th day of February, 2007.



Signed By:
_Danny C. Reeves_  DCR
United States District Judge